United States v. Brett Stimac Very good, Mr. Toder. You may truly please the court. I'm Brian Toder. I represent defendant appellant Brett Stimac. There are no factual disputes. There are no procedural disputes. The dispute is strictly the interpretation of 2Q21B1B and its application to findings that the district court made. The district court made some very specific factual findings, and when you couple that with the unambiguous language of this guideline provision, which is offense involving a pattern of similar violations, the district court erred when it overruled the PSR. It overruled it because there were no offenses involving a pattern of similar violations as I hope to demonstrate today. In this case, the application notes, case law, they're not helpful. There's a paucity of them. I think the district court realized that because it couched its ruling in terms of if I'm correct or if I believe. I believe that we all know that we are maybe making new law here, and even when the district court made its ruling, the language that it used, it actually omitted the word similar. The government did the same thing in its briefing. It referred to several statutes, several cases, guideline provisions, and in all these examples that the government provided, they talked about a pattern, but they again omitted the word similar. In this case, it pretty much turns on that. The one case that the government did provide was the Bertucci case, and that is an apposite for purposes of resolving what we have here today because that case was not a case involving a dissimilar pattern. It was a case involving two convictions where there were dead bald eagles. So then, and I think the government in its briefing concedes that the prior violations, the prior convictions are not similar, and nor could they be. The convictions that my client had before going into this, felon in possession, illegally transporting a deer 28 years ago, I think there was a conviction for stealing a statute or a mount, and that's it. There are no convictions that my client had of anything that resembles the offense before this court. No, it's not apples and oranges. It's like apples and taxi cabs. There is no similar violations. So the other tack that the court and the government took is that perhaps the individual steps that are required to commit these two crimes, maybe they can be parsed and they can be each considered a separate violation, but that doesn't work. Nor does it work that there are some state court violations. We have all kinds of cases that are, where there are violations of both federal law and state law at the same time. We've got felon in possession, it's illegal under both state and federal, Hobbs Act cases, controlled substance crimes. And by the way, these state cases, these state violations that are referred to, there was never a finding that my client committed a state court violation while he, in the commission of the crime that's before this court. No finding as such. As a matter of fact, here's what the court actually said. I'm quoting the judge. It appears that Mr. Steinmeier violated at least four state laws according to Mr. Ghita. So the finding is what appeared to Mr. Ghita. And as far as the other violations, alleged citations that he had over the years, they were dismissed. The government tries another tack even. And they're saying that because on the second day Mr. Steinmeier went back, that he must have gone back to go hunting, the district court did not make a finding that on the second day my client went hunting again. The district court found that there was a text message where Mr. Steinmeier said, I'm going to shoot another one. That's the finding. And more braggadocio. No evidence he hunted the second day. So to parse up this one course of conduct, which the PSR refers to, to parse this up into separate crimes, that would create a new rule in our jurisprudence. The only guidance we have in this entire case is what this court has said before. We begin our review with- Counsel, I'm not sure that's true. You talked about the district court talked about the paucity of help from the guidelines commentary. But the background commentary, 2Q2.1, lists the section, the crimes that this section applies to, which does not include trespassing on tribal lands. Now, isn't that a considerable guide in terms of what are similar violations? I was going to ask the government that, I'm giving them a heads up, because I think it's in your favor. Yeah. Well, I have no comment on that because that wasn't part of my argument, but I appreciate the help. Again, back to what I was just saying, the only thing that guides us in this case is what this court has said before about the guideline and the plain language of the guidelines. In words, unambiguous, we look no farther, is what you said, and it is a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a guideline. And on this record, no one seems to be giving any consideration to the word similar. And so, do I have three minutes left? I will reserve my time for a rebuttal. Very good. Ms. Palachek. Thank you, Your Honor. May it please the court, Emily Palachek on behalf of the United States. In this case, the court can find that the guideline for 2Q2.1B1B was properly applied under either the offense conduct or the prior criminal offenses. Like the district court, it seems that looking at the offense conduct is the path that more closely hews to the language of the enhancement. Looking at the language in that enhancement, when we talk about similar, we're not talking about the same. In the Bertucci case, to which we cited the Nebraska district court ruling, it was the same conduct. But the plain language definition of similar is alike but not identical. So, in this case, we are talking about... when it's not a crime to which the section applies. Your Honor, the guidelines apply to Class A misdemeanors and felonies of which the Lacey Act violation was a Class A misdemeanor. Are you talking the guidelines or are you talking this specific guideline? The guidelines in general. Yeah, don't take me to Chapter 1. I'm reading the background commentary to this specific provision that we're trying to interpret. But that specific provision was made in light of the fact that the guidelines apply only to Class A misdemeanors and not to... Well, you can say that. I mean, you got any authority for that? I think that it... How can we lump together the tribal trespass? Your Honor, if we... Offensive conviction when the enhancement doesn't apply to the tribal... The guidelines do specifically talk about what constitutes offense conduct. And offense conduct is broader than just the offense of conviction. It includes all of the other counts that also occurred. Okay, but that's your interpretive argument. The 2.1 does not talk about whether we are limited to a defense counsel. Let me... This ties in. I've got a related question. The Lacey Act, as written and interpreted, does not apply to the taking of wildlife. It applies to acquiring wildlife that has been taken in violation of law, right? That's correct. Therefore, defendant did not violate the Lacey Act on September 1. No. He did not complete the violation of the Lacey Act on September 1. He did not violate. He did not... Well, he had... No. Right. On September 1st, there was no completed Lacey Act violation. On September 3rd, we had a completed Lacey Act violation that had two predicate offenses. So how can this be both... How can this be a pattern when there's not a violation until September 3rd? Let me finish my question. If we look at the... Other than you say, well, if you go from A to B to C, that's not one event. That's three. I don't see it. Your Honor, if we look at the language of the enhancement, it says a violation. It does not say a class A misdemeanor. It does not say a felony. It does not say conviction. It says a violation. And the Black's Law Dictionary definition of a violation is much broader. It includes a simple transgression of the law. It includes dishonoring the law. So, in this case, we're looking at violation... Wait, wait, wait. Stop, stop, stop. You're saying that he could have been indicted and he could have been indicted for a Lacey Act violation on September 1? No, there was no completed Lacey Act violation. But, Your Honor, if we think about the... Maybe on September 2, but even that's questionable. And certainly on September 3. Your Honor... Where's the Lacey Act pattern? If we don't have a Lacey Act pattern and tribal offenses don't count, doesn't that say the enhancement doesn't apply? Your Honor, the tribal offenses do account because they are both predicate offenses for a Lacey Act violation. No, the tribal land offense. Not the unrelated tribal offenses that you want to take his entire criminal history and say that means it's a pattern. No, Your Honor, I mean the predicate offenses. The fact that he both took the bear by shooting it and then he removed the head. It makes sense that that enhancement would apply here because it is a more serious offense. He didn't just take that bear. He went back and he desecrated it. He took the head and thereby, as the district court said, interfered with the peaceful rest of the bear for the remainder of his days. It makes it a more serious... So argue for an upward variance. Your Honor, we certainly could have done that, but the district court correctly applied that enhancement. Again, the language of the enhancement is violation. It is not limited to the specific types of offenses. It's a similar violation. If we look at what these statutes do, both 1165 and the Lacey Act are statutes that regulate how, who, and where wildlife can be taken. They are indeed similar offenses. We can also look at those state laws that were violated. There was a finding, in fact, that he committed state court violations. That occurs on page 74 and page 92. You just said we can also look at these state cases. That's your argument. What's your best case authority supporting that? Again, this would be relevant offense conduct. It is all part of the offense. You have a case. Counsel, do you have a case? I would cite to the definition of offense conduct in the guidelines. The answer is no. I would believe any case that interprets that provision would include the entirety of the offense conduct, all acts that lead up to the offense. You do have a case. Give me a citation so I can go read about how sound your argument is. Your Honor, I do not have a specific case at the ready. I would point the court to the fact that these violations are not like the violations that defense counsel has cited here. This is not felon in possession as a federal offense and felon in possession as a state offense. This is that he did not have a valid license. Again, it makes the crime more serious. It makes sense to apply an enhancement. He didn't have a license. He was hunting in an area that was not approved by the state. Then he left the bear, a protected animal, for wanton waste. These are all statutes that go beyond the offense that is already contemplated in the statute. I'm sorry, Judge Colleton, you're on mute. I'm sorry. I didn't have my button on. How would you define similar then in the guidelines? I hear you saying similar violation doesn't mean it has to be a Lacey Act violation. Or it doesn't even have to be a violation that's covered by this specific guideline. You could have a similar violation. I think you're saying it's not covered by 2Q2.1. How would you define similar? What do you think it means? I would look to the dictionary definition. The American Heritage Dictionary defines similar as alike, though not identical. Here, these statutes are alike because they regulate the take of wildlife. That's at their core. It's about how and who can take wildlife and in what manner. That applies to both 1165 and to the Lacey Act. Again, the fact that he trusts... Just to sum up, what is the pattern? Can you enumerate quickly the violations that you see as the pattern? Yes, Your Honor. I would say that first, it's that there were two predicate offenses to this Lacey Act violation. Both the killing of the bear and the removal of its head. Both of those are predicate violations for purposes of the Lacey Act because they both violate tribal law. Second, there were three trespasses that occurred. One on September 1st when he killed the bear. One on September 2nd when he went to go remove the game. Which Mr. Stimmick admitted to in the information. Then third, on September 3rd when he went back and took the head. Again, trespass for purposes of removing the head. There were four state violations as well. Hunting without a valid license. Hunting in a no quota area. Wanton waste of a protected animal. Hunting within a half mile of a garbage dump. And again, the district court did make specific findings on those. On page 74, she specifically said that he had purchased a no quota license to hunt a bear in a specific area which should not include the reservation. And furthermore, it was not valid until September 2nd of 2019. So there are specific findings as to that in the record. And when you say two predicates for the Lacey Act, you're talking about violations of tribal law there? That's correct. The Lacey Act requires both a predicate offense and then the completion offense. So it's the illegal take and then the acquiring, transporting, possession, importing, and that second part of the act. And it makes sense to enhance because there were two predicates. So if I may briefly conclude, Your Honors, we would ask that the sentence be affirmed for proper application of 2Q2.1B1B. Thank you. Thank you. Is there any rebuttal time for Mr. Tolker?  Thank you, Your Honor. I just want to again repeat because we heard it again here. There were no specific findings that Mr. Steinmeck violated state laws. Instead, the judge said it appears that Mr. Steinmeck violated at least four state laws according to Mr. Guida. And if you just go by the, instead of going by the evidence, just apply the exact findings that the judge actually called findings. Your Honor, my client pled guilty and thereby avoided a trial. He was sentenced to the top of the guideline range. He's a mile in prison and will be released July 29th. If the case is remanded and the court again sentences him to the top of the guideline range, that means he'll be out in April. But this case is not so much about Mr. Steinmeck as it is about creating an unworkable rule respecting 2B, 2Q2.1B1B. And I would respectfully ask the court for that reason to remand. And I have nothing more unless the court has questions. Thank you, Counsel. The case has been fully briefed and argued and we'll take it under advisement.